IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BRETT CLINTON COMBS,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 4:22-cr-00076-RJS-PK<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Paul Kohler |

Before the court is Defendant's Motion to Determine *Franks* Issues and Request for Hearing.[1]  Having reviewed the Motion and associated briefing, the court determines a *Franks* Hearing is unwarranted and DENIES Defendant's Motion.

## BACKGROUND

The following factual information is taken from the Sealed Felony Complaint,[2] various affidavits filed in support of search warrants,[3] and Defendant's *Franks* Motion.[4]  When considering a defendant's potential entitlement to a *Franks* hearing, a district court is not required to draw all logically permissible inferences in favor of the defendant.[5]

This case involves the theft of firearms from a federally licensed firearm dealer known as Dixie Gun and Fish (Dixie) in St. George, Utah.[6]  On March 4, 2022, law enforcement

---

[1] Dkt. 106, *Franks Motion*.

[2] Dkt. 1, *Sealed Felony Complaint*.

[3] Dkt. 108, *Response to Defendant's Franks Motion* (*Response*), Exs. 1–5.

[4] *Franks Motion* at 3–4.

[5] *United States v. Moses*, 965 F.3d 1106, 1111 (10th Cir. 2020).

[6] *Sealed Felony Complaint* ¶ 4.

responded to a report that Dixie's "glass break" alarm had been triggered.[7]  Dixie's surveillance

video showed a single suspect breaking the front glass door with a rock.[8]  The suspect broke

several display cases and removed a number of firearms and placed them into a duffle bag.[9]  A

subsequent inventory of the firearms at the business revealed seventeen missing firearms, all of

which were 9 millimeter semi-automatic pistols.[10]  Surveillance footage from nearby businesses

also captured a white passenger sedan in the area shortly before the glass break alarm was

reported.[11]

      The front glass door of the business had been completely shattered, and the responding

officers located what appeared to be blood on the broken glass from one of the display cases.[12]

Authorities collected a sample of the discovered blood and submitted the sample to the Utah

State Bureau of Forensic Services (UBFS) for analysis.[13]  On April 26, 2022, the UBFS

determined the sample was attributable to an unknown male.[14]  The sample was later entered into

the Combined DNA Index System (CODIS) for comparison, and on June 7, 2022, the system

returned a DNA profile match attributable to Brett Combs (Defendant).[15]  According to

Defendant, CODIS maintained his DNA profile due solely to his involvement in a 2008 criminal

investigation in Farmington, New Mexico.[16]  There, authorities analyzed DNA on a soda bottle

---

[7] *Id.*

[8] *Id.* ¶ 5.

[9] *Id.*

[10] *Id.*

[11] *Response*, Ex. 1 ¶ 4.

[12] *Sealed Felony Complaint* ¶ 4.

[13] *Id.* ¶¶ 4, 6.

[14] *Id.*

[15] *Id.*

[16] *Franks Motion* at 3.

believed to have been left at a crime scene by Defendant.[17]  But the New Mexico criminal case brought against Defendant based on the 2008 investigation was ultimately dismissed as authorities "fail[ed] to obtain a buccal swab to confirm the evidentiary DNA sample . . . ."[18]

The Las Vegas Metro Police Department recovered one of Dixie's stolen firearms on May 25, 2022.[19]  Around the same time, a records check revealed Defendant was on supervised release in Las Vegas, Nevada.[20]  On June 23, 2022, a probation officer confirmed Defendant drove a white Volkswagen Passat, consistent with the white sedan seen in video footage from the burglary.[21]  The same day, Magistrate Judge Paul Kohler issued an arrest warrant for Defendant.[22]  And on June 24, 2022, Magistrate Judge Elayna J. Youchah in the United States District Court for the District of Nevada authorized search warrants for Defendant's residence and vehicle.[23]

Authorities arrested Defendant on June 28, 2022.  A Grand Jury returned an Indictment against Defendant on July 6, 2022,[24] charging one count of Theft of Firearms from a Licensed Dealer pursuant to 18 U.S.C. § 924(m) and one count of Felon in Possession of Firearms pursuant to 18 U.S.C. § 922(g)(1).[25]  Thereafter, in late July, mid-August, and late September 2022, Magistrate Judge Paul Kohler authorized additional search warrants.[26]  With the exception

---

[17] *Id.*

[18] *Id.*

[19] *Sealed Felony Complaint* ¶ 7.

[20] *Id.*

[21] *Response*, Ex. 1 ¶ 12.

[22] Dkt. 2, *Arrest Warrant*.

[23] *See Response*, Ex. 1.

[24] Dkt. 7, *Indictment*.

[25] *See id.*

[26] *Response*, Ex. 2 at 7, Ex. 3 at 17, Ex. 4 at 21, Ex. 5 at 25.

of the warrant issued by Judge Kohler on July 26, 2022,[27] Special Agent Jonathon Lee with the Bureau of Alcohol, Tobacco, Firearms, and Explosives was the affiant on each warrant affidavit.

Defendant filed the present Motion on September 19, 2024.[28]  The Motion is now ripe for review.[29]

### ANALYSIS

Defendant challenges the veracity of all warrants issued in the present case and seeks to suppress "evidence and fruits obtained as a result."[30]  Defendant appears to make three arguments justifying his position.  First, he argues the warrants issued by Magistrate Judges Youchah and Kohler were not supported by probable cause.[31]  Second, he claims the affiants omitted material information from their warrant affidavits, entitling him to a *Franks* hearing.[32]  Third, he urges the blood sample obtained at the Dixie crime scene should be suppressed due to uncertain chain-of-custody.[33]  Each argument will be discussed in turn.

### I.      The Warrants Were Supported by Probable Cause.

The Fourth Amendment requires the issuance of a search warrant be supported by probable cause.[34]  The Supreme Court has articulated the standards employed by magistrate judges and reviewing courts when considering whether sufficient probable cause exists to justify a search warrant:

---

[27] *Id.*, Ex. 2 at 1.

[28] *Franks Motion.*

[29] *Franks Motion*; *Response.*

[30] *Franks Motion* at 1.

[31] *See id.* at 4.

[32] *Id.* at 3.

[33] *Id.* at 5.

[34] *See* U.S. Const. amend. IV.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.[35]

A reviewing court also puts itself in the shoes of the warrant's issuing jurist and gives "substantial deference" to the prior decision.[36]

Here, the court determines the issuing magistrate judges had a substantial basis for concluding probable cause existed for each search warrant issued.  Among other things, each warrant included an affidavit explaining and attesting to how blood was (1) located at the Dixie crime scene, (2) sampled and submitted to the UBFS for analysis, and (3) matched to Defendant's profile after being entered into CODIS for comparison.[37]  This CODIS match alone is sufficient to support a magistrate's practical and common-sense determination that there was a "fair probability" that searches of Defendant would lead authorities to contraband or other evidence of the crime.  Contrary to Defendant's view, the positive CODIS hit did not "only amount[] to an investigative lead at best . . . ."[38]  It is well-established that a blood match from a

---

[35] *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (citation omitted).

[36] *United States v. Moses*, 965 F.3d 1106, 1112 (10th Cir. 2020) (citation omitted).

[37] *See Response*, Ex. 1 ¶¶ 5, 10, Ex. 2 ¶¶ 5, 8, Ex. 3 ¶¶ 7, 9, Ex. 4 ¶¶ 7, 9, Ex. 5 ¶¶ 7, 9.

[38] *Franks Motion* at 1.

reputable, national database that links a defendant to a crime scene establishes sufficient probable cause to issue a warrant.[39]

Each affidavit also included additional facts supporting probable cause.  For example, Defendant's vehicle matched the "white passenger sedan" observed in the area shortly before the glass break alarm was reported at Dixie.[40]  And authorities recovered one of the stolen firearms near Defendant's residence while he was on supervised release in Las Vegas, Nevada.[41]  The affidavits submitted in support of warrants issued after Defendant's arrest included even more facts, matching several items discovered in Defendant's car and at his residence to items captured by Dixie's surveillance video footage.[42]  Ultimately, by placing itself in the issuing judges' shoes and giving substantial deference to their determinations, the court finds there was a substantial basis for concluding probable cause existed for each warrant.

---

[39] *See, e.g.*, *Williams v. Reinhardt*, No. 15-121 (JLL), 2016 WL 4771383, at *4 (D. N.J. Sept. 12, 2016) ("[C]ourts both within this federal circuit and in New Jersey have concluded that a preliminary CODIS DNA match can itself be sufficient to support a finding of probable cause where the DNA samples being tested came from evidence reasonably connected to the alleged crime." (collecting cases)); *United States v. Kriesel*, 720 F.3d 1137, 1152 (9th Cir. 2013) ("Based on the CODIS identification, law enforcement has probable cause to take a new sample of blood from the identified suspect."); *James v. City of Albany*, 833 F. App'x 346, 347 (2d Cir. 2020) ("Moreover, and in any event, the district court properly concluded as a matter of law that defendants had probable cause to arrest James because his DNA matched blood taken from the victim's car and he was approximately the same height as the assailant." (unpublished) (citation omitted)); *Merriel v. Sec'y*, No. 6:11-cv-1100-Orl-37DAB, 2013 WL 1365744, at *4 (M.D. Fla. Apr. 4, 2013) ("[H]ere the DNA evidence obtained from the victim[ ] matched a known DNA profile in the CODIS database, thereby establishing a DNA match in this case. That match was sufficient to make Petitioner a suspect in this case and to establish probable cause to obtain a warrant to compel him to give a DNA sample.").

[40] *Response* Ex. 1 ¶¶ 8, 12.

[41] *Id.*, Ex. 2 ¶ 9, Ex. 3 ¶ 10, Ex. 4 ¶ 10, Ex. 5 ¶ 10.

[42] *E.g., id.*, Ex. 3 ¶ 12, Ex. 4 ¶ 12 ("Of note, agents located a black flashlight in the trunk of [Defendant's] vehicle, which was visually consistent with the flashlight observed in the surveillance video from Dixie Gun and Fish.  A pair of white Puma tennis shoes was located in the residence, which were visually consistent with the tennis shoes observed in the surveillance video.").

## II.     Defendant Is Not Entitled to a *Franks* Hearing Because the Alleged Omission Is Not Material.

Defendant next argues the affiants omitted material information from their warrant affidavits, necessitating a *Franks* hearing.[43]  Although affidavits supporting search warrants carry a presumption of validity,[44] the holding in *Franks v. Delaware* entitles a criminal defendant to a hearing on the veracity of these affidavits "if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause."[45]  The Tenth Circuit has held "[t]he standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods."[46]  Still, a defendant is only entitled to a *Franks* hearing if he makes a "substantial preliminary showing" of "both recklessness and materiality."[47]  Failure to satisfy either prong is fatal.[48]  Importantly, when "examining whether the excluded information would have been material, [courts] consider whether the affidavit, had it included the omitted information, still would have supported probable cause and thereby justified a warrant."[49]

Here, Defendant does not dispute the blood sample collected on March 4, 2022 matched a CODIS profile attributed to him.  He does not claim this information is false or inaccurate in any way.  Defendant's sole argument to justify a *Franks* hearing is that the affiants failed to include

---

[43] *Franks Motion* at 3.

[44] *Franks v. Delaware*, 438 U.S. 154, 172 (1978).

[45] *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).

[46] *United States v. McKissick*, 204 F.3d 1282, 1297 (10th Cir. 2000).

[47] *United States v. Moses*, 965 F.3d 1106, 1110 (10th Cir. 2020).

[48] *Id.*

[49] *Id.* at 1113.

facts in their affidavits specifying how Defendant's DNA profile was "illegally obtained" during a prior criminal investigation that took place "decades ago" in New Mexico.[50]  Defendant argues because the New Mexico case was dismissed, the DNA evidence from the New Mexico case should not have been included in the database.[51]  Had the true nature of the illegally obtained DNA evidence been included in the affidavits and presented to the magistrate judges, Defendant continues, "no warrant for arrest or search would have been issued."[52]  Put simply, Defendant argues the affiants' failure to include the disposition of the New Mexico case in their affidavits constituted a material omission.  The court disagrees.

The details surrounding how Defendant's DNA profile came to be included on the CODIS database "decades ago" are not material as they would have no effect on a magistrate judge's decision to issue a warrant in the present case.  Even viewing the CODIS match as the sole basis justifying each warrant, the inclusion of the disposition of the New Mexico case would not have negated the existence of Defendant's DNA profile in CODIS, nor the subsequent link between his profile and the blood collected from the scene.  Defendant does not explain how or why this information could have materially impacted the magistrates' decision.  It is well-established that matching one piece of personal information against existing government records does not implicate the Fourth Amendment,[53] and Defendant provides the court with no authority suggesting otherwise.  Ultimately, because the inclusion of the omitted information about the

---

[50] *Franks Motion* at 3.

[51] *Id.* at 4.

[52] *Id.* at 4.

[53] *Johnson v. Quander*, 440 F.3d 489, 498 (D.C. Cir. 2006) ("We conclude that accessing the records stored in the CODIS database is not a 'search' for Fourth Amendment purposes.  As the Supreme Court has held, the process of matching one piece of personal information against government records does not implicate the Fourth Amendment." (citing *Arizona v. Hicks*, 480 U.S. 321 (1987)).

disposition of the New Mexico case would have no effect on the magistrate's probable-cause determination, Defendant is not entitled to a *Franks* hearing.

### III.    The Court Declines to Rule on Defendant's Evidentiary Objections.

Federal Rule of Evidence 901 controls the admission or exclusion of real evidence at trial.  Rule 901 requires the proponent of the evidence to properly authenticate or identify real evidence by "produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it is."[54]  In other words, a condition precedent to admissibility of real evidence is providing proper foundation for the evidence.[55]  Chain-of-custody challenges are commonly brought under Rule 901 to contest the foundation of real evidence.[56]

In the present Motion filed on September 19, 2024, Defendant urges the court to suppress the blood sample collected from the Dixie crime scene based on issues with the sample's chain of custody and because "[t]he probative value of the DNA testimony is outweighed by the prejudicial value."[57]  In response, the United States produced additional discovery on September 27, 2024,[58] which included additional reports relevant to the chain of custody.  It also proffered additional information related to the chain of custody in its Response.[59]  In light of the proffer of additional discovery and new facts surrounding the blood sample's chain of custody, the court declines to rule on Defendant's evidentiary objections at this time.  Defendant's arguments are grounded in the Rules of Evidence, not the Fourth Amendment.  And seeking a *Franks* Hearing, "after all, is just another way to gain the protection of the Fourth Amendment's exclusionary

---

[54] Fed. R. Evid. 901(a); *U.S. v. Cardenas*, 864 F.2d 1528, 1530 (10th Cir. 1989).

[55] *Id.* at 1531.

[56] *See, e.g.*, *id.*

[57] *Franks Motion* at 5.

[58] *See* Dkt. 107, *Eighth Certificate of Compliance and Request for Reciprocal Discovery*.

[59] *Response* at 10–11.

rule,"[60] not the protection of Rules 901 and 403 of the Federal Rules of Evidence.  Defendant's chain-of-custody and Rule 403 challenges are more appropriate for a motion in limine, and they will be addressed, if necessary, after Plaintiff has time to review the additional information proffered by the United States.

## CONCLUSION

For the foregoing reasons, the court determines a *Franks* Hearing is unnecessary and DENIES Defendant's Motion.[61]  Defendant's chain-of-custody and Rule 403 objections are DENIED WITHOUT PREJUDICE and may be raised in a motion in limine after Defendant reviews the recently proffered discovery.

SO ORDERED this 4th day of November 2024.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[60] *United States v. Ingram*, 720 F. App'x 461, 463 (10th Cir. 2017) (unpublished).

[61] Dkt. 106.

10